UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | |
|---|---|
| TERRY CASH-DARLING, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF PAUL CASH, DECEDENT, <br><br> Plaintiff, <br><br> vs. <br><br> RECYCLING EQUIPMENT, INC., <br><br> Defendant. | 2:19-CV-00034-DCLC |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff's motion to alter or amend judgment [Doc. 137]. Defendant has filed a response in opposition [Doc. 142]. The Court previously granted REI's motion for summary judgment, dismissing Plaintiff's claims [Doc. 135]. Plaintiff now askes the Court to alter or amend its prior decision.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

Paul Cash ("Decedent") was killed by a metal dust explosion as he was loading recyclable materials into a hammermill shredder assembly for his employer, Lighting Resources, Inc. ("LR"). Plaintiff Terry Cash-Darling ("Plaintiff"), as personal representative of Decedent's estate, filed this action against Defendant Recycling Equipment, Inc. ("REI"), the manufacturer and seller of the hammermill assembly, alleging REI caused the assembly to be defective when it installed it at LR without a dust collection system [Doc. 39]. Plaintiff alleged the lack of a dust collection system rendered the assembly unreasonably dangerous because combustible dust was allowed to accumulate and eventually explode, killing Decedent [Doc. 39]. Plaintiff brought suit against REI for negligence, breach of warranty, and strict products liability in violation of the Tennessee Products Liability Act, Tenn. Code Ann. § 29-29-101.

REI moved for summary judgment, arguing it was not responsible for any alleged design defect in the hammermill assembly because it did not design the assembly, but only helped locate and install its component parts at the direction of Steven Barnett ("Barnett"), LR's Vice President of Operations [Doc. 94]. Plaintiff countered that REI was liable for the defective design of the assembly because REI "substantially participated in the integration" of the hammermill assembly [Doc. 99, pg. 7]. The Court granted REI's motion for summary judgment, finding that REI had not substantially participated in the integration of the hammermill assembly [Doc. 135]. Plaintiff now moves to alter or amend that judgment pursuant to Federal Rules of Civil Procedure 59(e) and 60(b) [Doc. 137].

II.  ANALYSIS

A party may move to "alter or amend a judgment [within] 28 days after the entry of that judgment." Fed. R. Civ. P. 59(e). Rule 59 "provides a procedure for correcting manifest errors of law or fact or considering the import of newly discovered evidence." *Helton v. ACS Group*, 964 F. Supp. 1175, 1182 (E.D. Tenn. 1997).[1] "A motion to alter or amend judgment [pursuant] to Fed. R. Civ. P. 59(e) may be made for one of three reasons: (1) an intervening change of controlling law; (2) evidence not previously available has become available; or (3) it is necessary to correct a clear error of law or prevent manifest injustice." *Id*. A Rule 59(e) motion is "not intended [to] relitigate issues previously considered." *Id*. "Where the movant is attempting to obtain a complete reversal of the court's judgment by offering essentially the same arguments presented on the original motion, the proper vehicle for relief is an appeal." *Id*. (internal citation omitted).

In her motion to amend, Plaintiff does not allege an intervening change of controlling law,

---

[1] Similarly, a motion to reconsider under Federal Rule of Civil Procedure 60(b) provides an opportunity for the Court to "correct manifest errors of law or fact and to review newly discovered evidence or review a prior decision when there has been a change in law." *Madden v. Chattanooga City Wide Serv. Dep't,* No. 1:06–CV–213, 2007 WL 2156705, at *3 (E.D. Tenn. July 25, 2007).

2

nor has she identified any evidence not previously available when the Court ruled on the motion for summary judgment. Instead, she argues the Court committed clear error of law when it granted summary judgment to REI, resulting in manifest injustice [Doc. 137, pgs. 4, 7].

The clear error of law Plaintiff claims the Court committed is based on her claim that "REI was the system integrator for the hammermill system[2] that killed [Decedent]." [Doc. 137, pg. 4]. Plaintiff argues that the Tennessee Supreme Court has adopted the "component parts doctrine," which imposes liability on the manufacturer when that "manufacturer substantially participates in the integration of the non-defective component into the design of the final product, if the integration of the component causes the final product to be defective and if the resulting defect causes the harm." *Davis v. Komatsu Am. Indus. Corp.*, 42 S.W.3d 34, 42 (Tenn. 2001) (adopting Restatement (Third) of Torts: Prod. Liab. § 5 (1998)). Plaintiff argues that, under *Davis,* the Court should have found REI liable because, she claims, REI substantially participated in the integration of the hammermill system [Doc. 137, pg. 5].

The Court agrees with Plaintiff that the component parts doctrine applies. Indeed, the Court quoted *Davis* in its memorandum opinion and order granting summary judgment to REI [Doc. 135, pg. 8]. The Court opined that "if Plaintiff can show that REI substantially participated in the integration of the hammermill system," then REI could be held liable for the defective system [*See* Doc. 135, pg. 9]. But the Court found, based on the record, that REI did not substantially participate in integrating the hammermill system.[3] The Court based this decision on

---

[2]   Both the Court and Plaintiff occasionally refer to the hammermill shredder assembly as the "hammermill system." The "hammermill shredder assembly" and the "hammermill system" are one and the same.

[3]   In its analysis, the Court relied on several cases which stand for the proposition that a manufacturer of a product is not liable for an employee's injuries when the employer opts not to include certain safety devices [Doc. 135, pgs. 9-13]. *See Spangler v. Kranco, Inc.*, 481 R.2d 373 (4th Cir. 1973); *Austin v. Clark Equip. Co.*, 48 F.3d 833 (4th Cir. 1995); *and Hoverman v. Harnischferger Corp.*, 1991 WL 158768, 941 F.2d 1209, at *1 (6th Cir. 1991)). The Court found

3

the undisputed facts, which showed that REI only purchased or built the component parts of the hammermill system at the direction of LR's Vice President Barnett, who designed the hammermill assembly and directed REI in every step of the assembly's purchase, modifications, and installation [Doc. 135, pgs. 2-4, 11]. Because the Court concluded that no reasonable jury could find REI substantially contributed to the design or the modification of the hammermill shredder assembly, Tennessee law required the Court to dismiss Plaintiff's claims against REI [Doc. 135, pg. 11].

In support of her motion to amend, Plaintiff refers to facts she relied on in her opposition to REI's motion for summary judgment [Doc. 137, pg. 6]. She refers to "deposition testimony and expert opinions" already cited in her opposition to summary judgment, and "incorporates by reference her Response in Opposition to Defendant's Motion for Summary Judgment and accompanying exhibits." [Doc. 137, pg. 6, n. 1]. But a motion to amend or alter judgment is not intended as a vehicle or opportunity for a party to re-litigate claims the Court has already considered. *Helton*, 964 F. Supp. at 1182. Plaintiff has not offered newly discovered evidence. Instead, she makes the same arguments she made in opposition to REI's motion for summary

---

these cases more relevant to the facts of this case than the facts in *Davis*. In *Davis*, the court found that defendant Komatsu substantially participated in integrating one of its presses into a press line, and the integration render the whole press line defective. *Davis v. Komatsu Am. Indus. Corp.*, 42 S.W.3d 34, 36-37 (Tenn. 2001); *Davis v. Komatsu Am. Indus. Corp.,* 19 F. App'x 253, 255-56 (2001). When Komatsu technicians installed the Komatsu press, they deactivated an important safety feature of the press to make it compatible with the entire press line. *Id*. The safety feature was called a "light curtain," and was used to stop the entire press line if it detected an object blocking one of the presses. *Id*. The plaintiff's hand was crushed while adjusting a press because the deactivated "light curtain" failed to detect his hand in the machinery. *Id*. The plaintiff alleged Komatsu's technicians rendered the press defective when they removed the safety device, even though the press itself was not defective as manufactured, and the court agreed. *Davis*, 42 S.W. 3d 34, 36-37. By contrast, here REI never removed any safety device from the hammermill assembly, but instead purchased the hammermill shredder and other parts for the shredder assembly at Barnett's direction. There never was a dust collection device for REI to remove. REI did not manufacture the hammermill shredder component, did not design the hammermill shredder assembly, and did not build or deactivate any safety device. Accordingly, this Court found that REI did not substantially participate in the integration and design of the hammermill shredder assembly.

4

judgment. *Compare* [Doc. 137, pgs. 6-7] *with* [Doc. 99, pgs. 7-8]. That is not the purpose of a motion to alter or amend.

Plaintiff argues she does not "reprise" these issues for the "purpose of relitigating them," but to "point out the manifest injustice posed by denying the Plaintiff her day in Court." [Doc. 137, pg. 7]. Plaintiff argues manifest injustice resulted from the dismissal because it barred her case "from being heard on the merits." [Doc. 137, pg. 4]. But a ruling on summary judgment *is* a ruling on the merits, and in this case the Court found Plaintiff had not provided sufficient evidence to proceed to trial. "[A] showing of manifest injustice requires that there exists a fundamental flaw in the court's decision that without correction would lead to a result that is both inequitable and not in line with applicable policy." *In re Bunting Bearings Corp.*, 321 B.R. 420 (N.D. Ohio 2004). Plaintiff argues she will "suffer an inequitable and unjust result" if the Court denies her motion to amend [Doc. 137, pg. 7]. The events that led to the explosion that took Paul Cash's life are nothing less than tragic. The Court is mindful of this loss and Plaintiff's sincere desire to hold REI accountable for that loss. But a tragic loss does not always mean liability in a court of law. This is one of those instances. To allow this case to move forward on the record before it, the Court would have to turn a blind eye to the undisputed facts and ignore Tennessee law.

### III. CONCLUSION

For the reasons stated herein, Plaintiff' motion to alter or amend judgment pursuant to Federal Rules of Civil Procedure 59 and 60 [Doc. 137] is **DENIED**.

SO ORDERED:

s/Clifton L. Corker
United States District Judge

5

Case 2:19-cv-00034-DCLC-CRW   Document 143   Filed 03/22/22   Page 5 of 5   PageID #: 1776